NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0225n.06

No(s) 07-4272/4314

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Feb 27, 2012*

LEONARD GREEN, Clerk

CHARLES CLARK; KELLEY CLARK,          )
                                      )          ON APPEAL FROM THE
        *Plaintiffs-Appellants*,      )          UNITED STATES DISTRICT
                                      )          COURT FOR THE SOUTHERN
v.                                    )          DISTRICT OF OHIO
                                      )
W & M KRAFT, INC.; DB INDUSTRIES, INC.;  )       O P I N I O N
INGRAM BARGE COMPANY; CONSOLIDATED     )
GRAIN & BARGE COMPANY,                 )
                                      )
        *Defendants-Appellees*.        )

BEFORE:    DAUGHTREY, COLE, and ROGERS, Circuit Judges.

COLE, Circuit Judge. Plaintiffs Charles and Kelley Clark appeal a jury verdict in favor of

defendants W & M Kraft ("Kraft"), DB Industries ("DBI"), Ingram Barge Company ("Ingram"), and

Consolidated Grain and Barge Company ("CGB"). Kraft appeals the district court's dismissal of its

cross-claim against CGB with prejudice. We AFFIRM the verdict from the district court and

REVERSE and REMAND the district court's order granting the dismissal with prejudice.

I. BACKGROUND

On December 16, 2004, while at work for CGB, Clark suffered permanent injuries after

falling off a cylindrical cell tower onto a nearby barge. CGB, a business that purchases, sells,

warehouses, and transports grain and grain products, employs outside laborers such as Clark to load

barges, as well as perform general maintenance and deckhand duties. Prior to the accident, Clark

was assigned to replace a broken cable on a twenty-five foot cylindrical cell tower near the dock.

To reach the top of the cell tower, Clark first had to board Barge OR5007, which Ingram owned, and

from there climb up the tower. Before climbing the cell tower, Clark put on his body harness and

attempted to attach a fall-restraint system. This system, which DBI manufactures, slipped from

Clark's hand before he could fasten it and retracted to the top of the tower. Clark then proceeded

to climb the cell tower with no fall-protection system and, at some point, fell and landed on the deck

of Barge OR5007.

The fall left Clark permanently disabled, suffering from paralysis on the left side of his body,

short-term memory loss, slurred speech, visual impairment, uncontrollable drooling and coughing,

a loss of dexterity, and the inability to eat, drink, or walk without assistance. As a result of these

injuries, Clark and his wife brought negligence claims against CGB, Ingram, DBI, and Kraft, a safety

consultant for CGB. The Clarks brought suit against his employer, CGB, under the Jones Act,

46 U.S.C. § 30104, for allegedly failing to provide a reasonably safe workplace and proper safety

equipment and training. Their claims against DBI alleged that its fall-restraint system was defective

due to inadequate warnings and instructions. They alleged that Ingram failed to maintain its barge

in a reasonably safe condition. And he sued Kraft for performing deficient safety audits.

In June 2007, the district court for the Southern District of Ohio held a two-and-a-half week

jury trial. Prior to trial, the Clarks filed a motion in limine to exclude the testimony of proposed

defense witness Dr. Robert Granacher, an expert in neuropsychiatry, forensic psychiatry, and related

fields. The district court decided to wait until trial to determine expert witness admissibility, and

declined to rule on the motion. At trial, expert witness qualifications were gauged by allowing the

proponent to qualify the witness and then permitting the other party to voir dire the expert, after which the court would rule on admissibility outside the presence of the jury. Prior to Granacher's testimony, he was qualified by establishing that he is board-certified in neuropsychiatry, forensic psychiatry, and psychopharmacology, and has authored three books, seven chapters, and forty articles on these topics, including the *International Textbook on Traumatic Brain Injury*. Granacher further informed the court that he has thirty years' experience and has personally examined thousands of brain injuries, including brain trauma cases involving substance abuse. Granacher has also served as a professor at the University of Kentucky College of Medicine since the mid-1970s. After this qualifying information, the Clarks' attorney declined the court's invitation to voir dire Granacher, after which Granacher was permitted to testify as an expert witness.

Granacher's testimony offered two opinions regarding Clark's injury: that Clark suffered from a twenty percent neuropsychiatric impairment and that one-third of this twenty percent impairment was a result of prior substance abuse and head trauma, not his fall from the cell tower. Granacher's opinions were predicated on his review of Clark's medical records, his two-day examination and interview with Clark, and his thirty years of experience in the field of traumatic brain injury. During Granacher's testimony, the district court also admitted his expert report, a twenty-three page report detailing the extent of Clark's injuries as well as their causes. The report contained a number of unflattering facts from Clark's past, including extensive prior alcohol, methamphetamine, cocaine, and marijuana use; a failure to pay child support and termination of his parental rights; numerous arrests for alcohol intoxication, convictions for trafficking

methamphetamine, driving while impaired, possession of marijuana, and failure to appear in court; and physical abuse leading to hospitalization.

On June 20, 2007, the jury returned a verdict finding that the Clarks had not established the facts necessary to recover from CGB for negligence under the Jones Act. The jury also found CGB twenty percent negligent in causing Clark's injuries, Clark eighty percent contributorily negligent, and DBI, Ingram, and Kraft zero percent negligent. The jury also found that the Clarks incurred nearly eleven million dollars in actual damages, but because the Jones Act did not cover Clark's accident, the Clarks were precluded from recovering any of these damages.

Also arising out of this incident, CGB and Kraft filed cross-claims against each other based on an indemnification provision in their consulting agreement. Rather than risk distracting and confusing the jury with this complicated contract interpretation issue, both parties agreed to remove the issue from the jury instructions and special verdict form, and dismiss the issue without prejudice for resolution after trial. The jury's verdict regarding CGB's negligence extinguished CGB's right to indemnification, and having lost its incentive to pursue these cross-claims after trial, CGB encouraged the court to dismiss the claims against it with prejudice. Kraft objected, reminding the court that the agreement to remove the cross-claims from the jury's verdict was predicated on a dismissal without prejudice. Nevertheless, the district court dismissed the cross-claims with prejudice and denied Kraft's Rule 59(e) motion to alter or amend the judgment.

## II. ANALYSIS

*A. The Admissibility of Granacher's Expert Witness Testimony*

The Clarks allege that the district court erred in admitting Granacher's testimony into evidence. They challenge the testimony's reliability and relevance, and contend that the district court's stated process for evaluating the admissibility of expert testimony was tantamount to abandoning its gatekeeping function. This Court reviews a district court's decision regarding the admissibility of all expert evidence for an abuse of discretion. *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *Best v. Lowe's Home Centers, Inc.*, 563 F.3d 171, 176 (6th Cir. 2009). This abuse of discretion standard also applies to our review of the district court's process for determining the admissibility of expert testimony. *Kuhmo Tire*, 526 U.S. at 152. "We will find an abuse of discretion only when the Court has 'a definite and firm conviction that the trial court committed a clear error of judgment." *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728 (6th Cir. 1994) (quoting *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989)).

Federal Rule of Evidence 702 permits the introduction of scientific, technical, or other specialized knowledge through expert testimony if it "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. An expert witness may testify "in the form of an opinion or otherwise if . . . (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." *Id.* It is the district court's duty to ensure that all expert evidence is "on a reliable foundation." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).

To accomplish this goal, the trial court takes on a "gatekeeper" role, charged with the responsibility of excluding unreliable expert evidence. *Id.* at 596-97. "A district court must

determine whether expert testimony is reliable before it can be admitted under Rule 702." *Mike's Train House, Inc. v. Lionel*, L.L.C., 472 F.3d 398, 407 (6th Cir. 2006). Although *Daubert* identified a number of potential considerations for determining reliability, *Daubert*, 509 U.S. at 593-94, the district court has wide latitude in "deciding how to test an expert's reliability," and must be afforded "considerable leeway in deciding . . . how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co.*, 526 U.S. at 152 (emphasis omitted). There is no one method the district court must follow, nor does this decision even have to take place at a preliminary hearing. *See Greenwell v. Boatwright*, 184 F.3d 492, 498 (6th Cir. 1999) ("[T]he trial court is not required to hold an actual hearing to comply with *Daubert* . . . ."); *see also Kuhmo Tire*, 526 U.S. at 152 ("The trial court must have the same kind of latitude . . . to decide whether or when special briefing or other proceedings are needed to investigate reliability . . . .").

Here, the district court's method of evaluating Granacher's expert qualifications was not an abuse of discretion. The court set forth a clear standard for deciding expert witness admissibility—after the proponent qualified the witness and the other party had an opportunity to voir dire him, the judge would make a decision, outside the jury's presence. The court applied this procedure equally to the plaintiffs' and defendants' proposed expert witnesses. The fact the Clarks' attorney did not participate in the district court's procedure and chose not to voir dire Granacher is not indicative of an improper *Daubert* inquiry. The Clarks may have preferred a *Daubert* hearing, but the failure to receive one is not an abuse of discretion. Given Granacher's credentials and the Clarks' decision to waive voir dire, there is no evidence to give this Court a "definite and firm conviction that the trial court committed a clear error of judgment." *Engebretsen*, 21 F.3d at 728.

Nor did the district court abuse its discretion in finding Granacher's testimony to be based "on a reliable foundation." *Daubert*, 509 U.S. at 596. The Clarks challenge Granacher's opinion that one-third of his impairment was due to past substance abuse and head trauma, contending that the opinion was not grounded in reliable science. To the contrary, Granacher's opinions were based on his review of Clark's medical records, his two-day examination and interview with Clark, and his thirty years of experience in the field of traumatic brain injury, including his personal experience treating thousands of brain-trauma victims. Medical expert witnesses often rely on "valid, peer-reviewed scientific evidence, along with [their] own clinical and research experience" in forming expert opinions, and this Court routinely finds that this basis "provide[s] a solid foundation upon which [the expert may] base[] his conclusion . . . ." *Glaser v. Thompson Med. Co., Inc*, 32 F.3d 969, 972 (6th Cir. 1994). The district court's determination that Granacher's expert opinion, based on leading medical literature and his extensive professional experience, satisfied *Daubert* is not an abuse of discretion.

The Clarks' contention that the district court abused its discretion in finding Granacher's testimony "relevant to the task at hand" is also meritless. *Daubert*, 509 U.S. at 580. The Clarks argue that his prior substance abuse, physical injury, convictions and jail time, and failure to pay child support had no bearing on the task before the court—determining liability for his fall—and should have been excluded because it was irrelevant and used exclusively to inflame the jury. While these facts may not be pertinent to the apportionment of negligence, they are relevant to the damages calculation. The substance abuse and physical injury testimony, while unfavorable to Clark, was relevant to determining the amount of Clark's impairment attributable to the fall. Additionally,

Clark's criminal history and failure to pay child support were relevant to the jury's future-earnings calculation. In fact, the Clarks opened the door for this testimony when they presented an economics expert's opinion predicting a robust future earning capacity despite Clark's previously spotty employment record. This expert attributed the recent birth of Clark's child as a basis for concluding that his future earnings would be more predictable and reliable, as Clark now had new familial obligations. This projection, however, failed to take into consideration a major reason for Clark's checkered employment record—his time spent incarcerated—and ignored Clark's history of nonsupport of a first child. The defendants' introduction of Clark's criminal history and failure to pay child support were relevant to the future-earnings calculation and to rebut the Clarks' economic expert's opinions. Given this basis, that the district court did not "commit[] a clear error of judgment" in admitting Granacher's expert testimony and report. *Engebretsen*, 21 F.3d at 728.

### B. *Kraft's Cross-Claim Against CGB*

Kraft urges that the district court erred in the dismissal of its cross-claim with prejudice after requesting a dismissal without prejudice. We consider three factors when determining "whether a court abused its discretion when it dismissed a complaint with prejudice in response to a plaintiff's request for dismissal without prejudice." *United States v. One Tract of Real Prop.*, 95 F.3d 422, 425 (6th Cir. 1996). "First, the district court must give the plaintiff notice of its intention to dismiss with prejudice. Second, the plaintiff is entitled to an opportunity to be heard in opposition to dismissal with prejudice. Third, the plaintiff must be given an opportunity to withdraw the request for voluntary dismissal and proceed with the litigation." *Id.* at 425-26. (internal citations omitted).

It is this third requirement that gives us pause. When Kraft and CGB requested a dismissal of their cross-claim at the close of evidence, the dismissal was predicated on its being "without prejudice." The district court's decision to change the dismissal to "with prejudice" after the trial concluded left Kraft with no "opportunity to withdraw the request for voluntary dismissal and proceed with the litigation." *Id.* Thus, the district court's decision was an incorrect application of law.

In response to this error, Kraft filed a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e), requesting the court to amend the dismissal to "without prejudice." The district court denied Kraft's motion, leaving it a dismissal "with prejudice." "Although the appropriate standard of review [for a Rule 59(e) motion] is generally whether an abuse of discretion has occurred, when the lower court rejects an application under Rule 59(e) based upon an erroneous legal doctrine, our standard of review is the same as in other cases of legal error." *Huff v. Metro. Life Ins. Co.*, 675 F.2d 119, 122 n.5 (6th Cir. 1982); *see Nat'l Ecological Found. v. Alexander*, 496 F.3d 466, 476 (6th Cir. 2007). ("[T]o the extent that the motion to alter or amend was based on an erroneous legal doctrine, the standard of review is *de novo*.")

The district court erred in unilaterally converting Kraft's motion to dismiss without prejudice to a dismissal with prejudice. It was, therefore, further error for the court to deny Kraft's motion to correct this error.

## III. CONCLUSION

We AFFIRM the verdict of the district court and REVERSE and REMAND the district court's order granting dismissal with prejudice.