FILED
United States Court of Appeals
Tenth Circuit

August 2, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 10-8049

JAMES FRASER,

Defendant-Appellant.

**Appeal from the United States District Court
for the District of Wyoming
(D.C. No. 2:09-CR-00342-ABJ-1)**

Thomas A. Fleener, Fleener & Vang, LLC, Laramie, Wyoming, for Defendant-Appellant.

James C. Anderson, Assistant United States Attorney (Christopher A. Crofts, United States Attorney, with him on the brief), Cheyenne, Wyoming, for Plaintiff-Appellee.

Before **GORSUCH, HOLLOWAY,** and **MATHESON**, Circuit Judges.

**GORSUCH**, Circuit Judge.

James Fraser shot and killed Milton Brown. That much is not disputed. What is disputed is whether the district court should have allowed Mr. Fraser to present evidence of the homicide as part of his defense against a federal weapons

charge. How could evidence that he killed a man have *helped* Mr. Fraser? Mr. Fraser says that the facts and circumstances surrounding the shooting would have demonstrated how and why he *needed* to possess a gun — even if it meant breaking federal law to do so. But whether or not a necessity defense can be raised to a federal gun charge — a premise subject to several and significant questions — Mr. Fraser can't establish that defense on its own terms as a matter of law. Accordingly, the district court's decision to exclude evidence of Mr. Brown's killing was no abuse of discretion and we affirm.

The evidence tells an unfortunate tale. On a November afternoon, Mr. Fraser and Mr. Brown argued with each other at Mr. Fraser's home. The argument culminated with Mr. Brown threatening to kill Mr. Fraser and his family. Mr. Brown then left the Fraser residence, but indicated an intent to return in order to make good on his threat. Mr. Fraser took the threat seriously enough to prepare an equally violent response. He drove his children to their grandparents' house. He then went to a friend's house and traded cocaine for a rifle. And he called another friend, Wayne Fernandez, who met him back at the Fraser residence armed with a semi-automatic pistol. Mr. Fraser then loaded his borrowed rifle with ammunition and waited.

Mr. Brown returned as promised, this time carrying a gun. When Mr. Brown entered the house through the front door, Mr. Fraser replied by shooting and then fleeing. When police arrived, they found Mr. Brown lying on the ground

about a block from the Fraser residence and dying. An autopsy showed that Mr. Brown was shot twice in the back, once in the buttock, and once in the arm — and that all of the shots came from Mr. Fraser's rifle.

For its part, the federal government charged Mr. Fraser for being a felon unlawfully in possession of a firearm and ammunition (18 U.S.C. § 922(g)(1)), as well as for possessing a firearm in furtherance of a drug trafficking crime (18 U.S.C. § 924(c)(1)(A)(i)), and for distributing cocaine (21 U.S.C. § 841(b)(1)(C)). As the case progressed toward trial, the government filed a motion *in limine*, urging the district court to prohibit Mr. Fraser from introducing any evidence of the shooting. The government argued that the only question at issue in the § 922(g)(1) charges was whether Mr. Fraser was a felon who possessed a gun and ammunition. *Why* he had those things, the government said, was irrelevant and should be excluded from trial under Fed. R. Evid. 403. In reply, Mr. Fraser argued that evidence about the killing would allow him to argue to the jury that his defiance of federal gun laws was necessary to meet Mr. Brown's threat and so justified as a matter of law.

The district court eventually granted the government's *in limine* motion and soon after that Mr. Fraser and the government reached a plea deal. In the deal, Mr. Fraser agreed to plead guilty to possessing a firearm in violation of § 922(g)(1), and to using that firearm to further a drug trafficking offense in violation of § 924(c)(1)(A)(i). In exchange, the government dropped its charges

alleging Mr. Fraser unlawfully possessed ammunition in violation of § 922(g)(1) and distributed cocaine in violation of § 841.  The government also agreed to allow Mr. Fraser to appeal the district court's *in limine* ruling.

After the district court accepted the parties' plea deal it proceeded to sentencing.  On the § 922(g)(1) conviction, the district court invoked U.S.S.G. § 5K2.21 to issue an upward departure of 39 months and impose a sentence of 60 months incarceration, three years of supervised release, and a $100 special assessment.  On the § 924(c)(1)(A)(i) conviction, the district court imposed a 60 month sentence (to be served consecutively) along with three years supervised release (to be served concurrently) and a $100 special assessment.

In his appeal, Mr. Fraser begins by renewing his challenge to the district court's *in limine* ruling.  He argues that evidence about the shooting was essential to his effort to pursue a necessity defense to the federal gun charges against him, and that *United States v. Vigil*, 743 F.2d 751 (10th Cir. 1984), expressly permits him to mount such a defense.

There are, however, reasons to question the availability of a necessity defense in these circumstances.  There is no mention in the U.S. Code of a necessity defense to a § 922(g)(1) charge.  And though Congress surely enacts criminal statutes against a background of the common law, *see United States v. Bailey*, 444 U.S. 394, 415 n.11 (1980); *Morissette v. United States*, 342 U.S. 246, 263 (1952), the status of the necessity defense in the criminal common law has

always been, at best, "somewhat controversial," *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 490 (2001). For precisely this reason, this court has in recent years questioned the continuing viability of *Vigil*'s suggestion that a necessity defense might be available to meet a federal weapons charge. *See United States v. Al-Rekabi*, 454 F.3d 1113, 1121-22 n.7 (10th Cir. 2006) ("[t]he availability of a necessity defense [discussed in *Vigil*] was called into question in [*Oakland Cannibis*]"); *United States v. Butler*, 485 F.3d 569, 577 n.8 (10th Cir. 2007) (noting that *Al-Rekabi* only *assumed* the continuing viability of a judicially implied necessity defense under *Vigil*). And the status of necessity as a defense at common law is perhaps no more uncertain than when invoked by private persons seeking to justify the intentional taking of human life — a situation that arguably applies here, given that Mr. Fraser seems to claim he "needed" to break federal gun laws *in order* to meet the further "need" of killing Mr. Brown. *See Regina v. Dudley & Stephens*, 14 Q.B.D. 273, 288 (1884) (refusing to permit a defense of necessity to a charge of intentional homicide); *United States v. Holmes*, 26 F. Cas. 360, 368 (1842) (recognizing in dicta the possibility of a general necessity defense, but rejecting its use in the case at hand); Model Penal Code & Commentaries § 3.02, p. 11 & n.3 (advocating the defense while noting its detractors); Hoffheimer, *Codifying Necessity: Legislative Resistance to Enacting Choice-of-Evils Defenses to Criminal Liability*, 82 Tul. L. Rev. 191, 226 (2007) (arguing that the Model Penal Code "promulgated a radical

version of the defense").  Neither is it clear a necessity defense is even necessary given the potential availability of self-defense and defense-of-others in cases of intentional homicide —  two defenses with much firmer footing in the common law (though Mr. Fraser seeks to invoke neither).  *See* Christie, *The Defense of Necessity Considered from the Legal and Moral Points of View*, 48 Duke L.J. 975, 1027-29 (1999); Leverick, *Defending Self-Defence*, 27 Oxford J. L. Stud. 563, 578 (2007).

To resolve this appeal, however, we don't have to tangle further with any of these questions.  Even assuming for argument's sake the availability of a necessity defense, the facts Mr. Fraser wishes to introduce don't come close to establishing it on its own terms.  Given this, and the lack of any other basis on which evidence of the shooting might be relevant, the district court could hardly have abused its discretion under Fed. R. Evid. 403 when it refused to permit Mr. Fraser's evidence.  No one, after all, has a right under the Constitution or at common law to present evidence that is insufficient as a matter of law to establish any recognized defense.  *See, e.g., Crane v. Kentucky*, 476 U.S. 683, 689-90 (1986); *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *United States v. Seward*, 687 F.2d 1270, 1277 (10th Cir. 1982).

To succeed with a necessity defense, Mr. Fraser concedes (as he must) that he would have to show he took possession of the gun because he lacked any reasonable lawful alternative.  *Bailey*, 444 U.S. at 410.  The facts of this case,

- 6 -

however, reveal precisely the opposite to be true. After Mr. Brown issued his threat and before he returned to make good on it, Mr. Fraser acknowledges he had enough time to take his children to their grandparents' house; to meet a friend in order to borrow a rifle; to call another friend and return to his house; to put on rubber gloves and load the rifle; and to wait. Aplt. App. Vol. 1 at 129-130. However many hours and minutes all this consumed may not be entirely clear from the record, but it is clear enough that there *was* plenty of time in it all for Mr. Fraser to try at least one more (lawful) alternative — calling the police.

Mr. Fraser replies that he didn't call the police because, based on past encounters, he distrusted them. And we don't doubt this to be true. But neither do we doubt that this fact is insufficient as a matter of law to make the failure to call the authorities before violating federal gun laws (let alone shooting a man) a reasonable course of action. Perhaps the police wouldn't have proven helpful, as Mr. Fraser asserts. But to have acted reasonably, he at least had to *try* to seek their help. Ours is not the rule of vigilante justice but the rule of law. And the rule of law depends on the shared conviction that the law is, at least as a prima facie matter, just and worthy of respect. Before breaking the law could have possibly become a reasonable course of action, Mr. Fraser had to try to comply with it first. A general distrust of legal authorities isn't enough to excuse the failure to do so. *See Butler*, 485 F.3d at 577 ("[D]istrust does not eliminate . . . disclosure of the circumstances to the police as a reasonable legal alternative.").

- 7 -

Moving past his conviction, Mr. Fraser challenges the procedural reasonableness of the district court's sentencing decision in two essential movements. First, he argues that the district court failed to explain adequately the reasons for its sentence and upward departure. Second, he contends, the district court issued an upward departure based on Mr. Brown's death without considering whether Mr. Fraser acted justifiably. Again, we cannot agree.

When it comes to explaining itself on the record, a sentencing court's obligation varies. If the sentence imposed is "of the kind, and within the range, described in [the Guidelines], and that range exceeds 24 months," the burden of explanation imposed by 18 U.S.C. § 3553(c)(1) is comparatively modest; a district court must offer "only a general statement of the reasons for its imposition of the particular sentence." *United States v. Ruiz-Terrazas*, 477 F.3d 1196, 1199-1201 (10th Cir. 2007) (quoting § 3553(c)(1)); *Rita v. United States*, 551 U.S. 338, 356-57 (2007) (confirming after *Ruiz-Terrazas* that a within-guidelines sentence does "not necessarily require lengthy explanation"). But if the sentence falls outside the Guidelines range, § 3553(c)(2) requires more; the sentencing court must provide specific reasons for imposing a sentence different from the Guidelines. *See Ruiz-Terrazas*, 477 F.3d at 1200; *United States v. Mendoza*, 543 F.3d 1186, 1192 (10th Cir. 2008).

Although Mr. Fraser doesn't engage this nuance, it is clear to us that the district court's sentence in this case satisfies either standard. The district court

explained in detail its view that an upward departure under § 5K2.21 for Mr. Fraser's § 922(g)(1) conviction "is warranted [from approximately 21] to 60 months imprisonment based upon significant credible evidence [that] the Defendant was involved in trafficking cocaine base from 2006 through [2009]." Aplt. App. Vol. 3 at 122. The district court explained that Mr. Fraser dealt a total of 150 to 500 grams of cocaine during that period. And it explained that a sentence of as high as 120 months could be imposed under current law for this drug trafficking conduct alone. Without *citing* the § 3553(a) factors expressly, the district court proceeded to *discuss* at length the history and characteristics of the defendant, the seriousness of the offense, the advisory Guidelines range, the Sentencing Commission's policy statements, and how Mr. Fraser's sentence compared to others found guilty of similar conduct — § 3553(a) factors one and all. In light of all this, it is clear that the district court considered the § 3553(a) factors and explained with more than sufficient specificity the reasons for its sentence.

For these same reasons, Mr. Fraser's second procedural reasonableness argument — that the district court departed upward based on the killing of Mr. Brown without allowing Mr. Fraser a sufficient chance to explain why he did so — must also fail. Mr. Fraser's drug trafficking past was alone cited by the district court and was itself sufficient to justify the court's sentencing departure. The district court did not — and did not need to — rely on Mr. Brown's homicide

to justify the departure it made.  Whether the district court could have cited the killing to help support its departure is neither here nor there; it didn't.

Moving from procedure to substance, Mr. Fraser closes his appeal with a brief attempt at challenging the substantive reasonableness of his § 922(g)(1) sentence.  "But to win a substantive reasonableness appeal is no easy thing," and Mr. Fraser's effort falls well short.  *United States v. Rendon-Alamo*, 621 F.3d 1307, 1310 n.\*\* (10th Cir. 2010).  Once again, Mr. Fraser asserts that the district court's upward departure under § 5K2.21 was really based on the killing of Mr. Brown and that the record is "void of a rationale . . . to justify" such a departure.  Opening Br. at 28.  But once again this argument rests on a faulty premise.  The district court expressly premised its departure on Mr. Fraser's drug dealing, not the homicide.  And, once again, Mr. Brown does not dispute either the accuracy of the district court's recitation of the facts about his past drug trafficking — or the district court's legal authority to impose a § 5K2.21 departure of the magnitude it did based on the nature, scope, and duration of that unlawful activity.

For these reasons, the judgment is affirmed.