FILED
United States Court of Appeals
Tenth Circuit

January 29, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

JAMES WILLIE WHITE,

      Defendant - Appellant.

No. 14-1101
(D.C. No. 1:04-CR-00339-JLK-1)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE,** Chief Judge, **HOLMES** and **BACHARACH**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is, therefore, submitted without oral argument.

Defendant James White appeals from the district court's imposition of a 24-month prison sentence following revocation of his supervised release. Exercising jurisdiction

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

pursuant to 28 U.S.C. § 1291, we affirm.

I

In October 2004, White pleaded guilty to one count of possession with intent to distribute 50 grams or more of a mixture or substance containing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  White was initially sentenced to a term of imprisonment of 108 months, to be followed by a five-year term of supervised release.  That sentence, however, was subsequently reduced by the district court to 86 months pursuant to Federal Rule of Criminal Procedure 35.

On February 10, 2011, White completed his term of imprisonment and commenced his five-year term of supervised release.  White began living with his sister in Aurora, Colorado, and attending classes at the Community College of Denver.

On September 17, 2013, White's probation officer filed with the district court a petition for issuance of a warrant due to violation of the terms of his supervised release. The petition alleged that White had committed five Grade C violations: (1) on or about February 13, 2012, White pleaded guilty in Denver County District Court to driving while ability impaired[1]; (2) on or about September 25, 2012, White submitted a random urine

---

[1] According to the record, White was sentenced in state court to 365 days of jail time, which was suspended, 42 days of home detention, 24 months of probation, a program of alcohol education, therapy, monitored breathalyzers, and 52 hours of community service.  Further, in June 2013, White was sentenced to five days in jail for failure to comply with his sentence.  And in July 2013, White tested positive for alcohol use.

specimen that returned positive for cocaine; (3) on August 1, 2013, White was charged in Aurora Municipal Court with assault and attempted battery; (4) on or about September 9, 2013, White was charged in Aurora Municipal Court with assault and attempted battery; and (5) on or about August 26, 2013, White moved from his reported residence and did not notify the probation officer that he had moved. A warrant for White's arrest was issued later that same day, and White was subsequently arrested on September 20, 2013.

On November 19, 2013, the district court held a supervised release violation hearing. White admitted to three of the violations alleged by the probation officer: pleading guilty in state court to driving while ability impaired, testing positive for cocaine, and failing to report a change in residence. The other two alleged violations were dismissed. Although the district court determined that the Guidelines range was "eight to 14 months" of imprisonment, it concluded that "the policy statements of the Sentencing Commission" underlying that range did not "have much relevance to" White and it thus chose "not . . . to follow them." ROA, Vol. 3 at 20-21. Instead, the district court sentenced White to time served and placed him on supervised release for an additional period of two years. As a condition of supervised release, White was directed to reside in a halfway house for a period of six months. The district court also directed White to "continue pursuing [his] education and . . . stay away from drugs and booze." Id. at 21. Lastly, the district court stated: "If you come in again, don't even talk to me. It's just two years." Id. When asked by the district court, "Do you understand," White responded, "Yes, sir. Completely." Id.

White's second term of supervised release commenced on January 3, 2014. On January 16, 2014, White's probation officer filed a petition for issuance of a warrant alleging that White had violated the terms of his supervised release by failing to comply with the rules of the residential reentry center (RRC) where he was assigned to live. An arrest warrant was issued that same day and White was arrested one day later.

The magistrate judge assigned to the case held a preliminary revocation and detention hearing on January 22, 2014. The government presented testimony from White's probation officer. White did not testify or present any other witnesses. At the conclusion of the hearing, the magistrate judge found there was "probable cause to believe that . . . violations of the law occurred." ROA, Vol. 3 at 60. In support, the magistrate judge made the following findings of fact:

> On January 15th, 2014 at approximately 6:55 a.m. a female staff member at the RRC was having a conversation with a resident at the RRC, the defendant interrupted the conversation and started telling the other resident what he should do. The staff member told the defendant that the conversation did not concern him. The defendant's voice became loud with the staff member, so she told him that he would need to return to his room if he continued to be argumentative. The defendant told the staff member that he would not return to his fucking room and that staff cannot to [sic] speak to him like he is a fucking child. The defendant was directed to go to his room until his supervisor was available to speak to him. The defendant told the staff member that was bullshit, that he had somewhere to go, and he was going to leave whether staff fucking liked it or not. The defendant then left the facility without authorization.

> The defendant returned to the RRC at 7:55 a.m. and staff told the defendant to go to his room. The defendant told staff that he would not go to his fucking room and said that he would remain in the office until the director of the facility arrived. The defendant was asked several times to leave the staff office and go to his room, but he refused to do so. The staff

4

member locked the staff office because she felt threatened by the defendant.

> On January 16th, 2014 the probation officer was advised by the director of the RRC that the RRC was rejecting the defendant's placement at the facility. The probation officer was also advised that the female staff member who dealt with the defendant on January 15th called the director that morning, on the 16th, and told him that she felt threatened and she did not want to come to work because she did not feel safe around the defendant.

Id. at 58-60. Based upon these findings, White was detained pending a hearing before the district court.

The probation office prepared a supervised release violation report and filed it with the district court on February 3, 2014. The report noted that the violations carried a Guidelines sentencing range of "8 to 14 months," but the report recommended that the district court impose a 24-month term of imprisonment and no additional term of supervised release. Id., Vol. 2 at 52. In support, the report asserted that White's "conduct . . . at the RRC show[ed] a complete lack of regard for the directives of" the district court, id., and "that a sentence of two (2) years['] imprisonment adequately me[t] the statutorily mandated sentencing purposes of deterrence, just punishment, and the protection of the public," id. at 53. The report also asserted that "[t]his punitive sanction [wa]s recommended to impress upon [White] the importance of following the Court's order." Id.

On March 18, 2014, the district court held a hearing on the alleged violations of supervised release. At the outset of the hearing, the parties advised the district court that White admitted "the violation of leaving the halfway house facility" without authorization

5

and then voluntarily returning.  Id., Vol. 3 at 75.  White's counsel argued, however, that the confrontation between White and the RRC staff member "was due to the staff member's use of inflammatory language to . . . White."  Id. at 77-78.  Although White's counsel conceded that White could not return to the same RRC, he argued "that an appropriate manner of supervision c[ould] involve a few different things," including White "liv[ing] with his sister."  Id. at 80.  According to White's counsel, White's sister "ha[d] confirmed her willingness to have him" stay with her.  Id.  Alternatively, White's counsel argued that White could be placed at a different "halfway house."  Id. at 81.  White's counsel argued that, "[a]ll told, White [wa]s able to be supervised in the community and th[e] violation d[id] not merit further incarceration."  Id. at 83.  Finally, White's counsel characterized as "severe" the 24-month sentence of imprisonment recommended by the probation officer.  Id. at 85.

The government's counsel argued, in response, "that this is typical behavior of . . . White looking back not only at his criminal history, but also at his actions in the [magistrate judge's] courtroom."  Id. at 86.  The government's counsel explained that when the magistrate judge was making her oral ruling "[a]t the conclusion of the . . . preliminary hearing," White "began speaking loudly at his seat saying, 'This is bullshit.  This is stupid.  This is just bullshit,' showing absolutely no respect for [the magistrate judge]."  Id. at 87.  And, the government's counsel asserted, "[w]hen the clerk called the recess and told everybody to rise, . . . White refused to rise and stayed seated in the courtroom."  Id.  The government's counsel also argued that "White understood when he

6

went to that halfway house what was on the line and yet . . . chose to handle things the way he decided to, not according to the rules, but the way he decided." Id. at 88. Finally, the government's counsel argued, in reference to the request by White's counsel that White be allowed to live with his sister, that it was "counterintuitive that when somebody misbehaves . . . [and] continues to use threatening and disrespectful behavior, that they receive a less restrictive sanction." Id. at 90. Consequently, the government's counsel asked the district court to impose "a term of imprisonment." Id.

After allowing White to speak, the district court made the following ruling:

> Mr. White, I told you the last time you were here not to come back in again. The way that you disrespect women and threaten them is not acceptable under any circumstance. And they don't employ members of the British gentry as staff in a halfway house. You have to accept their limitations too and you don't. You don't accept anything that doesn't agree with you and that makes these people frightened and they have every right to be. I told you not to do this.

> You are in violation, and I am very sorry that you are, but that's not the point. You violated the conditions of supervised release as alleged in the probation officer's petition. The halfway house doesn't want anything to do with you anymore. The probation department says this is enough. There is no reason to think that another halfway house would do any good.

> And therefore, it's ordered and adjudged that the defendant's supervised release is revoked. The defendant is sentenced to the custody of the Bureau of Prisons for a period of two years.

> I recommend that the Bureau of Prisons credit the defendant with 25 days spent in official detention prior to sentencing. I also order that there be no more further supervised release.

> The defendant is advised of his right to appeal the sentence. If you desire to appeal, a notice of appeal must be filed with the Clerk of the Court within 14 days after the entry of judgment or your right to appeal will be

7

lost.  If you are unable to afford an attorney for an appeal, the Court will appoint one to represent you.  If you so request, the Court will immediately prepare and file a notice of appeal on your behalf.

That's all.

Id. at 92-94.

Judgment was entered in the case the following day, March 19, 2014.  White filed a timely notice of appeal.

II

On appeal, White argues that the 24-month revocation sentence imposed by the district court was procedurally unreasonable for several reasons.  White further argues that the sentence is substantively unreasonable.  We address, and reject, each of these arguments in turn.

*1) Procedural unreasonableness*

It is undisputed that White failed to contemporaneously challenge the district court's sentencing procedures.  As a result, we review his claims of procedural unreasonableness only for plain error.  United States v. Gantt, 679 F.3d 1240, 1246 (10th Cir. 2012).  To satisfy the plain error standard, White must establish (1) that the district court committed error, (2) the error was plain, and (3) the plain error affected his substantial rights.  United States v. Cotton, 535 U.S. 625, 631 (2002).  If White makes each of these showings, we may exercise our discretion to correct the error only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.  Id. at 631-632.

8

White argues that the district court plainly erred by failing to calculate the advisory Guidelines range, consider the applicable § 3553(a) factors and defense counsel's arguments, and provide a statement of reasons for the chosen above-Guidelines-range sentence. Assuming that White can satisfy the first three steps of plain error review with respect to each of these alleged errors, we see no reason to exercise our discretion in his favor because, as we shall explain below, the errors did not seriously affect the fairness, integrity, or public reputation of these judicial proceedings.

To begin with, it is beyond dispute that the district court's purported errors did not adversely affect White in terms of the revocation of his supervised release. Section 7B1.3(c)(3) of the Sentencing Guidelines states:

> In the case of revocation based, at least in part, on a violation of a condition specifically pertaining to community confinement [which includes halfway houses and residential re-entry centers], intermittent confinement, or home detention, use of the same or a less restrictive sanction is not recommended.

U.S.S.G. § 7B1.3(c)(3). This sentiment is echoed in Application Note 1 to § 7B1.3, which states that "[r]evocation of . . . supervised release generally is the appropriate disposition in the case of a Grade C violation by a defendant who, having been continued on supervision after a finding of violation, again violates the conditions of his supervision." U.S.S.G. § 7B1.3 cmt. n. 1. In this case, it was undisputed that White, who had previously violated the conditions of his original term of supervised release, violated the conditions of his new term of supervised release by refusing to follow the orders of the staff member at the RRC and then leaving the RRC without authorization. As a

9

result, the above-quoted Guidelines provision and application note essentially recommend that White not be placed in community confinement again. And the district court agreed with that recommendation, noting both that the RRC where White had resided would no longer accept White as a resident, and that it was unlikely that confining White in a different RRC would result in a better outcome.

We are further persuaded, based upon three portions of the record on appeal, that the district court's purported errors had no impact on the term of imprisonment the district court ultimately imposed on White. First, of course, is the district court's statement to White at the conclusion of White's first supervised release violation hearing on November 19, 2013. As previously noted, the district court advised White in open court: "If you come in again, don't even talk to me. It's just two years." ROA, Vol. 3 at 21. Second, the supervised release violation report that was prepared in advance of the most recent supervised release violation hearing calculated a proposed Guidelines range of 8 to 14 months' imprisonment, but recommended that the district court vary upward from this range and impose a two-year term of imprisonment in order "to impress upon [White] the importance of following the Court's order." Id., Vol. 2 at 53. Third, the district court's statements on the record during the supervised release revocation hearing, though brief, indicate that it essentially agreed with the probation officer's recommendation and reasons therefore. In light of these facts, there is little doubt that the district court's purported errors had no impact on the sentence that the district court ultimately imposed on White. Thus, it is unnecessary for us to "make the useless gesture of remanding for

10

reconsideration" when all of the circumstances indicate that the district court would, after remedying the noted procedural errors, simply reimpose the same sentence. United States v. Rines, 419 F.3d 1104, 1107 (10th Cir. 2005).

*2) Substantive unreasonableness*

We now turn to address the substantive reasonableness of the 24-month term of imprisonment imposed by the district court. "We employ an abuse of discretion standard in reviewing a criminal defendant's sentence for substantive reasonableness." United States v. Martinez, 610 F.3d 1216, 1227 (10th Cir. 2010). Under this standard, we afford substantial deference to the district court. Id. "Because substantive reasonableness contemplates a range, not a point, in this arena we recognize a range of rationally available choices that the facts and law at issue can fairly support." Id. (internal quotation marks and citations omitted). Just because "we might reasonably conclude that a different sentence was also appropriate" does not constitute "a sufficient basis for reversal." Id. Instead, we will "reverse only when the district court renders a judgment that is arbitrary, capricious, whimsical or manifestly unreasonable." Id. (internal quotation marks omitted). Consequently, "to win a substantive reasonableness appeal is no easy thing." United States v. Fraser, 647 F.3d 1242, 1247 (10th Cir. 2011) (internal quotation marks omitted).

White argues that the sentence imposed by the district court is "unreasonably long mainly because [his] violation in this case was relatively minor—a factor that [he argues] the district court . . . gave insufficient weight." Aplt. Br. at 26. In particular, White notes

11

that "[t]he incident at" the RRC "involved no drug use, no new law violations, and no violence." Id. White also argues that the district court "gave far too much weight to . . . White's earlier violation of supervised release." Id. at 27. Finally, White argues that the sentence "undermines [his] successful transition from prison to community—a factor that greatly informed the sentence imposed in November 2013 but, inexplicably, no longer mattered in January 2014." Id. at 28.

A review of the relevant Sentencing Guidelines, however, undercuts White's arguments and persuades us that the sentence imposed by the district court was well within the bounds of permissible choice. To begin with, U.S.S.G. § 7B1.4 outlines the advisory ranges of imprisonment that may be imposed upon revocation of supervised release. In this case, it is undisputed that the advisory Guidelines range of imprisonment was 8 to 14 months (because White committed a Grade C violation of his supervised release and had a Criminal History Category of VI). Notably, however, Application Note 4 to § 7B1.4 states that "[w]here the original sentence was the result of a downward departure . . . , an upward departure may be warranted." U.S.S.G. § 7B1.4 cmt. n.4. That closely parallels White's situation. In November 2013, the district court, in response to White's violation of his initial term of supervised release, gave White a considerable break and varied downward from the advisory Guidelines range of imprisonment of 8 to 14 months (the same advisory Guidelines range as is now applicable) and imposed a two-year term of supervised release. In light of that variance, it was entirely consistent with Application Note 4 for the district court to vary upward from the advisory Guidelines

12

imprisonment range in response to White's misconduct at the RRC.

Further, U.S.S.G. § 7B1.3(d) provides, in pertinent part, that "[a]ny . . . community confinement . . . previously imposed in connection with the sentence for which revocation is ordered that remains . . . unserved at the time of revocation shall be ordered to be . . . served in addition to the sanction determined under § 7B1.4 (Term of Imprisonment), and any such unserved period of community confinement . . . may be converted to an equivalent period of imprisonment." U.S.S.G. § 7B1.3(d). In this case, the district court had previously ordered White (in November 2013), as a result of his violation of the terms of his initial term of supervised release, to serve six months of community confinement. Because White served only nine days of that six-month term prior to his violation, it was permissible for the district court, under the terms of § 7B1.3(d), to convert that remaining period into "an equivalent period of imprisonment" and impose that period of imprisonment on White "in addition to the sanction determined under § 7B1.4." U.S.S.G. § 7B1.3(d) (emphasis added).

Considered together, §§ 7B1.3 and 7B1.4 effectively authorized the district court, in light of the facts of White's most recent violation, as well as his entire supervised release history, to impose a sentence well above the 8 to 14 month advisory Guidelines range. More specifically, § 7B1.4 effectively authorized the district court to vary or depart upwards from the advisory Guidelines range, and § 7B1.3 in turn authorized the district court to add an additional six-month term to any above-Guidelines-range

13

sentence.[2]  As a result, the 24-month-sentence imposed by the district court is not unreasonable in length.

III

For the foregoing reasons, we AFFIRM the sentence imposed by the district court.


Entered for the Court


Mary Beck Briscoe
Chief Judge

---

[2] Thus, it would have taken only a four-month upward variance from the advisory Guidelines range, combined with the addition of the six-month period to account for the unserved term of community confinement, to reach the maximum allowable sentence of 24 months.