NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  18a0139n.06

No. 17-1552

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Eastern District |
| MARK JOHN VASQUEZ, JR., | ) | of Michigan |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

_____/

**FILED**
Mar 15, 2018
DEBORAH S. HUNT, Clerk

**BEFORE:  GUY, SUTTON, and COOK, Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge.**  Defendant Mark John Vasquez, Jr., an Indian tribal resident, was indicted and convicted by a jury of assault of a dating or intimate partner by strangling or attempting to strangle, and domestic assault by a habitual offender.  On appeal, defendant challenges the sufficiency of the evidence, the testimony of the government's expert witness, and the reasonableness of his sentence.  After considering the issues, we find no error requiring reversal, and we affirm.

**I.**

Defendant and his victim, Marcella Jones, began living together in 2010 and married in 2012.  They divorced in 2014 but resumed their relationship in an attempt to reconcile.  Their tumultuous relationship was characterized by drinking, partying, and argument.

On March 11, 2016, Jones went to defendant's house, located on the Isabella reservation in Isabella County, Michigan, intending to confront him about a suspected infidelity. The two argued, and defendant concedes that he put Jones "in a tight, painful bear hug for a few seconds." After some more arguing, the conflict again became physical: according to defendant's own version of the facts, Jones "characterized the altercation [as] mutual but allowed that [defendant] choked her twice. She refused to characterize the incident as strangling because she did not feel that [defendant] intended to do extreme damage or harm." At trial, Jones admitted that defendant had both hands around her neck, which affected her breathing "a little bit." A responding police officer photographed marks on Jones's neck, but Jones later testified that she did not think they were from the fight.

Throughout Jones's testimony, she took responsibility for initiating and maintaining the fight with defendant, attributed her injuries to other events, recanted certain accusations she had made to the police about defendant, and stated that she did not want defendant to go to prison. She explained that she only called the police because she thought defendant was making a criminal complaint against her; if she had known that defendant had not actually filed a complaint, she would never have called the police. She stated that she did not believe that defendant had technically strangled her by putting his hands around her neck and restricting her breathing.

After Jones testified, the responding police officer, Shane Waskevich, testified. He stated that, contrary to Jones's testimony at trial, she had told him that defendant *did* cause the marks on her neck, and Waskevich took some photos of the injuries. In response to that testimony, defense counsel objected, citing Jones's testimony at trial that the photos and injuries were not caused by defendant. The trial court overruled the objection, reasoning that the evidence was

based on an adequate foundation, and defense counsel was free to argue this fact question to the jury.

Because of Jones's reluctance to implicate defendant, the government called Holly Rosen, a social worker at Michigan State University and the director of a domestic violence program there.[1]  Rosen had never met Jones; rather, she testified generally about characteristics and behaviors typical of victims of domestic violence.  Rosen testified that it is typical for a victim to blame herself and/or minimize what she experienced.  Victims tend to lie to cover up the abuse.  They do not typically view themselves as victims and might assert that they are unafraid of their assailant.  Rosen also testified that it is typical for an abusive relationship to be punctuated by "good times," which makes it more difficult for the victim to leave the relationship.  Defendant never objected to Rosen's testimony at trial.

The jury found defendant guilty of assault of a dating or intimate partner by strangling or attempting to strangle, and domestic assault by a habitual offender.  Defendant's guideline range was 51-63 months, and the district court sentenced him to a below-guideline range of 46 months of imprisonment.

## II.

### A.  Rosen's Expert Testimony

A district court's evidentiary rulings are reviewed for an abuse of discretion.  *United States v. Kilpatrick*, 798 F.3d 365, 378 (6th Cir. 2015).  Because defendant did not object to Rosen's testimony at trial, however, defendant's claims are reviewable only for plain error.  *United States v. Gunter*, 620 F.3d 642, 645 (6th Cir. 2010).  To prevail under this standard of review, defendant must establish "(1) error, (2) that was obvious or clear, (3) that affected his

---

[1] Defendant does not challenge Rosen's qualifications as an expert.  He challenges the content of her testimony.

substantial rights, and (4) affected the fairness, integrity, or public reputation of his judicial proceedings." *Id.*

In pertinent part, Federal Rule of Evidence 702 states that expert testimony is permitted if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Defendant argues that Rosen's testimony did not help the jury because Rosen "attempt[ed] to apply a general observation about a larger group to particular individuals whose conduct is in question," i.e., Jones. Def. Br. at 19 (quoting *Charalambopoulos v. Grammer*, No. 3:14-CV-2424-D, 2017 WL 930819, at *11 (N.D. Tex. Mar. 8, 2017)). The government, on the other hand, claims that Rosen's testimony did assist the jury in understanding and evaluating Jones's seemingly inconsistent actions and testimony.

*United States v. LaVictor*, 848 F.3d 428 (6th Cir. 2017), is directly on point and resolves this issue in the government's favor. In *LaVictor*, a victim of domestic violence and sexual assault implicated the defendant while she was in the hospital, but at the defendant's detention hearing and at trial, the victim testified that she consented to the defendant's behavior, disavowed her previous statements to police, and insisted that her complaints were the result of confusion and pressure from hospital workers. Over the defendant's objection, the district court permitted the government's expert witness to testify about the dynamics of victim recantation in the context of domestic violence. We affirmed. As here, the defendant had argued that such testimony was not helpful to the jury, but we reasoned that "[t]here is a factual issue in dispute — whether or not [the victim] consented. [The expert]'s proposed testimony provides the jury with an explanation for the contradictory evidence in the record. . . . Therefore, we believe that such testimony is highly probative and helpful to the jury." *Id.* at 442. Nothing

distinguishes *LaVictor* from the instant case. *LaVictor* is therefore controlling, and the district court did not commit an obvious or clear error.

Defendant attempts to distinguish his case from *LaVictor* using *United States v. LeBlanc*, 45 F. App'x 393 (6th Cir. 2002). In that case, the defendant—who was accused of child sexual abuse—proffered the testimony of a psychologist who would have explained how "the memories of young children . . . can readily become distorted and contaminated because of unintentional inadvertent adult influence" during forensic interviews. *Id.* at 398. We affirmed that such testimony was inadmissible, however, because the defense could not point "to a single instance in which [the child victim] was supposedly subjected to allegedly coercive or suggestive questioning techniques." *Id.* at 400-01. In other words, the proffered expert testimony was not "sufficiently tied to the facts of the case," and, therefore, it would not help the trier of fact. *Id.* at 400 (quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985)).

Defendant argues that Rosen's testimony is like that of the witness in *LeBlanc* because, "akin to what occurred in *LeBlanc*, the record in the instant case lacked sufficient evidence that Ms. Jones had previously been the victim of domestic abuse." By contrast, defendant argues that in *LaVictor* the expert's testimony was only relevant because the victim's relationship with the defendant "was characterized by multiple instances of prior domestic abuse." This argument fails. Rosen's testimony was made relevant by Jones's conflicting testimony in conjunction with the evidence of the 2016 incident—not by Jones's history of victimhood. The same was true in *LaVictor*. 848 F.3d at 442 ("[The expert]'s proposed testimony provides the jury with an explanation for the contradictory evidence in the record."). Nothing in *LaVictor* requires the government to establish a pattern of domestic violence between defendant and Jones. Rather, under *LaVictor* and *LeBlanc*, the expert's testimony must bear some relevance to the proponent's

5

theory, which in turn must have some evidentiary support. In *LeBlanc*, the theory of coercive interviewing had no evidentiary support, so expert testimony on that topic would not have been helpful to the jury. In *LaVictor* and the instant case, however, the expert testimony was helpful to the jury because it would help jurors make sense of a victim's contradictory testimony.

Defendant also asserts that, applying Federal Rule of Evidence 704(b), Rosen impermissibly testified on Jones's credibility and thus invaded the exclusive province of the jury. Def. Br. at 22-23 (quoting *United States v. Cecil*, 836 F.2d 1431, 1441 (4th Cir. 1988) ("[A] psychiatrist may not testify to the credibility of a witness; that issue is one for the jury.")). This issue, too, is controlled by *LaVictor*, in which the defendant argued that "generic" testimony on victim recantation violates the rule that "testimony that aides the jury in weighing a victim's credibility is improper." 848 F.3d at 442. We held that domestic violence presents a special case: "[T]he dual phenomenon of battered woman's syndrome and victim recantation are beyond the knowledge of an average juror." *Id.* Accordingly, Rosen's testimony did not usurp the jury's factfinding role, and the district court did not clearly err.

## B. Sufficiency of the Evidence

We review the sufficiency of the evidence for a conviction "in the light most favorable to the prosecution" to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)). Circumstantial evidence, if "substantial and competent," may sustain a conviction even if no direct evidence exists. *United States v. Tarwater*, 308 F.3d 494, 504 (6th Cir. 2002) (quoting *United States v. Humphrey*, 279 F.3d 372, 378 (6th Cir. 2002)).

To convict defendant of assault of an intimate or dating partner by strangling or attempted strangling in violation of 18 U.S.C. § 113(a)(8), the jury had to find, in part, that "defendant assaulted [the victim] by strangling or attempting to strangle her." 18 U.S.C. § 113(b)(4) defines "strangling" as "intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of a person by applying pressure to the throat or neck, regardless if that conduct results in any visible injury or whether there is any intent to kill or protractedly injure the victim." To convict Vasquez of domestic assault by a habitual offender, the jury had to find, in part, that "defendant committed a domestic assault against [Jones]." Defendant does not challenge the sufficiency of the evidence as it relates to any of the unlisted elements of these two crimes.

Defendant argues that no rational jury could have convicted him in light of the inconsistencies in Jones's testimony and the fact that Officer Waskevich offered hearsay testimony as to the conversations he had with Jones in the aftermath of the 2016 incident.[2]

The government does not dispute whether Waskevich's testimony was hearsay. Regardless, defendant's sufficiency claim would fail even if Waskevich's alleged hearsay testimony is not considered. Even at her most reluctant, Jones offered testimony on which defendant could be convicted. She testified that defendant had both hands around her neck, which affected her breathing. This satisfies both the "strangulation" element in 18 U.S.C. § 113(a)(8) and the "domestic assault" element in 18 U.S.C. § 117. The domestic assault conviction is further supported by the evidence that defendant "bear hugged" Jones, which caused her pain. Although Jones attempted to recant certain of her accusations, downplayed defendant's intent, and took responsibility for the fight, her credibility in this regard was a fact

---

[2] Defendant also asserts that his sufficiency concern "is magnified when one includes the testimony of Ms. Rosen . . . ." As we concluded *supra*, however, Rosen's testimony was proper.

question for the jury. And "in cases in which we assess the sufficiency of the evidence, we do not weigh the evidence, assess the credibility of the witnesses, or substitute our judgment for that of the jury." *United States v. Wright*, 16 F.3d 1429, 1440 (6th Cir. 1994) (citing *United States v. Evans*, 883 F.2d 496, 501 (6th Cir. 1989)).

### C. Reasonableness of Sentence

Finally, defendant challenges the procedural and substantive reasonableness of his sentence. Procedural error includes "failing to consider the [18 U.S.C.] § 3553(a) factors . . . or failing to adequately explain the chosen sentence." *United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). "For a sentence to be substantively reasonable, 'it must be proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes' of § 3553(a)." *Id.* (quoting *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008)). We review the reasonableness of a district court's sentence for an abuse of discretion. *Id.* (citing *Gall*, 552 U.S. at 50). "If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness." *Gall*, 552 U.S. at 51 (citing *Rita v. United States*, 551 U.S. 338, 347 (2007)). Showing that a below-guidelines sentence is unreasonable "is even more demanding." *Curry*, 536 F.3d at 573 (citing *United States v. Bailey*, 264 F. App'x 480 (6th Cir. 2008)).

Regarding the substantive reasonableness of his sentence, defendant argues that the district court gave unreasonably little weight to Jones's request for leniency, his qualities as a father, and his struggle with alcoholism. He concedes that the district court credited his and Jones's testimony to that effect, but asserts that "it does not appear that [the judge] adequately considered the testimony of Ms. Jones who spoke at length in mitigation of sentencing."

The court gave adequate consideration to Jones's request for leniency. After hearing from both sides at sentencing, the court immediately acknowledged Jones's allocution. The court also addressed the subjects of her testimony, including defendant's qualities as a father and his alcoholism. Defendant's underdeveloped claim is insufficient to overcome the strong presumption of reasonableness that we apply to his below-guidelines sentence. This is particularly true in light of evidence that Jones's advocacy for defendant in the district court was the result of their abusive relationship.

Regarding the procedural component of his sentencing claim, defendant asserts, simply, that "it does not appear [the § 3553(a) factors] were considered individually." The district court did not abuse its discretion by failing to discuss the § 3553(a) factors to defendant's satisfaction. "[A] district court must offer 'only a general statement of the reasons for its imposition of the particular sentence.'" *United States v. Ferguson*, 518 F. App'x 458, 470 (6th Cir. 2013) (quoting *United States v. Fraser*, 647 F.3d 1242, 1246 (10th Cir. 2011)). We have held that

> a district court makes an adequate statement of reasons under § 3553(c)(1) by tailoring its comments to show the sentence was consistent with the sentencing factors of § 3553(a). No specific language is required when stating the reasons for a sentence, as a district court simply must demonstrate that it was "mindful" of the appropriate factors when imposing the sentence.

*Id.* at 470-71 (citing *United States v. Parrado*, 911 F.2d 1567, 1572-73 (11th Cir. 1990)).

The presentence investigation report discusses the factors individually, and in detail, and the judge indicated several times that he read that report and invited the parties to object to it. More importantly, contrary to defendant's contention, the judge specifically delineated the § 3553(a) factors that he found most important to his sentence, including his decision to downwardly depart. He discussed the defendant's history and characteristics, both positive and negative, as well as the characteristics of the offense. He considered the need to deter future

conduct and to protect the public, drawing a link between defendant's substance abuse and criminal activity; he then considered the most effective correctional treatment, asking defendant questions about how he would change his behavior to stay sober and specifying that defendant be remanded to a facility with pertinent treatment programs. This is sufficient for us to conclude that the district court was mindful of the § 3553(a) factors and did not abuse its discretion during sentencing.

**AFFIRMED**.