**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ARMANDO ROGELIO DURETE,

    Defendant - Appellant.

No. 20-1085
(D.C. No. 1:19-CR-00145-PAB-2)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **BACHARACH**, and **PHILLIPS**, Circuit Judges.
_____

Armando Rogelio Durete was found guilty by a jury of knowingly possessing a

firearm and ammunition after having been convicted of a felony, in violation of

18 U.S.C. § 922(g)(1).  He appeals his conviction, arguing the district court erred in

refusing to instruct the jury on the defense of necessity.  Exercising jurisdiction under

28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

## I.    Background

In the early morning hours of September 16, 2018, a violent altercation erupted in a parking lot adjacent to the corner of Market and Fifteenth Streets, in downtown Denver, Colorado. A group had gathered near a taco truck parked on Market Street. A witness testified that two men were yelling and cursing. One of them yelled, "We gonna paint the city. . . . Who wants to get painted[?]" R., Vol. IV at 92 (internal quotation marks omitted). The witness testified that one of these men was lifting his shirt to show a gun in the waistband of his pants. The second man, who she described as a stocky Black man with braids, was holding a gun. When that man hit her friend in the back of his head, the witness ran from the parking lot across Market Street. As she was fleeing, the witness heard gunfire. Photographic evidence of Durete's physical appearance on that day was consistent with the witness's description of the man with braids who was holding a gun, but she did not identify Durete in a photographic line-up.

The evidence, including shell casings found at the scene, indicated that shots were fired from both sides of Market Street. Durete's brother was shot and injured. A surveillance video captured the scene in the parking lot immediately after the shooting stopped. It showed a man resembling Durete walking from behind the taco truck across the parking lot to a car, which was later identified as belonging to Durete's brother. After briefly entering the car, the man walked a short way to the edge of a restaurant patio adjacent to the parking lot, where he bent down beside a pillar.

2

The surveillance video also showed a security guard pointing toward the man beside the pillar, then following that man across the parking lot, where they both disappeared behind the taco truck. Several witnesses testified that, shortly thereafter, that security guard tackled a man and held him until the police arrived and arrested him. The man the police arrested was later identified as Durete.

After Durete's arrest, the police found a gun on the restaurant patio next to the pillar. A witness identified that gun as a Smith & Wesson M&P 9-millimeter semi-automatic handgun. Another witness testified that Durete's DNA was found on that gun. The police also recovered seven spent nine-millimeter cartridge cases near the entrance to the parking lot on Market Street.

Durete was indicted on one count of violating § 922(g)(1) by knowingly possessing a firearm and ammunition after previously being convicted of a felony. At his trial, Durete asked the district court to instruct the jury on the affirmative defense of necessity. His proposed instruction, which was based on this court's pattern jury instruction, included three elements that he would be required to prove by a preponderance of the evidence:

> 1. The defendant was under an unlawful and present imminent and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury to himself . . .;
>
> 2. The defendant had no reasonable legal alternative to violating the law, that he had no chance both to refuse to do the criminal act and also to avoid the threatened harm;
>
> 3. A direct causal relationship could have been reasonably anticipated between engaging in the criminal action and avoiding the threatened harm.

3

R., Vol. I at 168. The district court indicated that, if it were to give a necessity instruction, it would include a fourth element based upon certain case law in this circuit: "that the defendant did not recklessly or negligently place himself in a situation where he would be forced to engage in the criminal conduct." *Id.*, Vol. IV at 439. After the close of the evidence, the district court declined to give a necessity instruction, holding there was insufficient evidence to support any of the four elements of that defense. The jury found Durete guilty on the single charge of unlawful possession of a firearm under § 922(g)(1).

## II. Discussion

On appeal, Durete argues that the district court erred in denying his request for a jury instruction on the defense of necessity. We review the court's denial of a defense instruction for an abuse of discretion. *See United States v. Al-Rekabi*, 454 F.3d 1113, 1121 (10th Cir. 2006).

In enacting § 922(g)(1), "Congress has declared that felons are not to be in possession of firearms." *United States v. Butler*, 485 F.3d 569, 577 (10th Cir. 2007). Although "we have applied an exception to this general rule" by allowing defendants to raise a necessity defense, "the exception is narrow and is appropriate only in extraordinary circumstances." *Id.*; *see also Al-Rekabi*, 454 F.3d at 1122 ("The necessity exception should be strictly and parsimoniously applied."); *United States v. Vigil*, 743 F.2d 751, 756 (10th Cir. 1984) (noting it is "extremely difficult" for a felon charged with unlawfully possessing a firearm "to successfully raise the defense of necessity to that charge").

"A criminal defendant is entitled to an instruction on his theory of defense provided that theory is supported by some evidence and the law." *Al-Rekabi*, 454 F.3d at 1121 (internal quotation marks omitted). "Some evidence" in this context means "sufficient evidence that would permit the jury to find in [his] favor by a preponderance on each element of the defense." *United States v. Dixon*, 901 F.3d 1170, 1177 (10th Cir. 2018); *see also id.* at 1177 n.4 (confirming applicability of the preponderance-of-evidence standard). "For the purposes of determining the sufficiency of the evidence to raise the jury issue, the testimony most favorable to the defendant should be accepted." *Al-Rekabi*, 454 F.3d at 1121 (internal quotation marks omitted).

Durete maintains the district court should have instructed the jury on the defense of necessity in light of the evidence showing there was a verbal altercation that quickly erupted into gunfire; he was with his brother, who was shot multiple times; he had no other alternative than to defend himself and his brother by returning fire; there was no time for him to call the police or respond in any other lawful way; and he gave up possession of the gun within 30 seconds after the gunfire ended. Thus, Durete's defense theory was that it was necessary for him to possess a gun during the shootout and for a minimal amount of time thereafter. He contends there was sufficient evidence supporting all three elements of the necessity instruction that he tendered to the district court.[1]

---

[1] Durete also argues that the district court erred in adding a fourth element to the necessity defense and did not view the evidence on that element in the light most

We need not address Durete's arguments regarding the evidence on each of the elements of a necessity defense because we conclude that he presented insufficient evidence that he lacked a reasonable, lawful alternative to possessing a gun. "The *sine qua non* of [the necessity] defense is a lack of a reasonable, lawful alternative." *Dixon*, 901 F.3d at 1178.[2] Thus, Durete had to show there was evidence sufficient to allow a jury to find that he "had no reasonable legal alternative to violating the law, that he had no chance both to refuse to do the criminal act and also to avoid the threatened harm." R., Vol. I at 168. In other words, the evidence had to support a finding that Durete "took possession of the gun because he lacked any reasonable lawful alternative." *United States v. Fraser*, 647 F.3d 1242, 1246 (10th Cir. 2011). In making this showing, Durete must point to evidence that he actually tried a reasonable, legal alternative to unlawfully possessing a gun, that he had no time to do so, or "that a history of futile attempts revealed the illusionary benefit of the alternative." *Vigil*, 743 F.2d at 756; *see also Fraser*, 647 F.3d at 1246 ("Before breaking the law could have possibly become a reasonable course of action, [the defendant] had to try to comply with it first."). In assessing what alternatives are reasonable, we "apply[] an objective lens." *Dixon*, 901 F.3d at 1181.

---

favorable to him. We need not address these contentions because we can resolve his appeal based solely upon the three elements in the jury instruction he tendered.

   [2] Although *Dixon* involved the defense of duress rather than necessity, these two defenses have essentially the same elements. *Dixon*, 901 F.3d at 1176 & n.3.

The district court concluded Durete's necessity defense failed on this element because there was

> no evidence that [he] needed to fire back at people as opposed to pulling a person he was trying to protect out of the way, as opposed to him running behind the taco truck or some other thing . . . .
>
> . . .
>
> There is no evidence that he didn't have the alternative of not possessing the weapon, ducking, running, getting out of the way of any gunfire that was being directed in his direction or in the direction of someone that he was attempting to protect . . . .

R., Vol. IV at 441-42.

On appeal, Durete points to evidence that someone was shooting from the other side of Market Street at his brother, who was shot and injured, and that "this all happened in a matter of seconds." Aplt. Opening Br. at 9. But he fails to identify any evidence that he tried any of the legal alternatives identified by the district court. Nor does he show that the very short timeframe of the shootout foreclosed such alternatives. *See Al-Rekabi*, 454 F.3d at 1123 ("[A]ll reasonable alternatives must be foreclosed."); *Dixon*, 901 F.3d at 1180 (noting the defendant offered no "compelling argument as to why [the court] should believe [the cited] alternatives were unavailable"). Rather, the video evidence at Durete's trial showed numerous people running, ducking, and otherwise attempting to hide during the gunfire. Thus, it is clear that, objectively speaking, there were reasonable courses of action open to Durete other than unlawfully possessing a firearm. *See Dixon*, 901 F.3d at 1179.

Durete nonetheless points to this court's statement in *Butler* that a case "grounded in self defense" was "a possible example of an arguable case for a

7

thorough and principled exhaustion of available legal alternatives to illegal possession of a firearm." 485 F.3d at 576. He argues there is evidence that he was acting in defense of himself or his brother by possessing and shooting the gun. But we did not hold in *Butler* that simply acting in self-defense was sufficient to demonstrate a lack of legal alternatives to unlawfully possessing a gun. Rather, we suggested that a defendant had arguably exhausted all legal alternatives by (among other things) reporting threats on his life to federal agents, the sheriff, his parole officer, local churches, and a newspaper, and by moving from one house to another and resorting to being homeless for a time to avoid the danger, before he acquired a gun for self-protection. *See id.* at 575.

The district court did not abuse its discretion in holding there was insufficient evidence in Durete's case to support the no-lawful-alternative element of a necessity defense. Having held that Durete failed to demonstrate there was sufficient evidence on one of the elements of the defense, we need not address the other elements. *See Butler*, 485 F.3d at 576.

## III.    Conclusion

In the context of a charge under § 922(g), the necessity defense is narrow, strict, and parsimoniously applied. The district court did not abuse its discretion in

8

holding that Durete failed to meet his burden to produce evidence sufficient to satisfy

all of the elements of that defense. We therefore affirm the district court's judgment.

Entered for the Court


Gregory A. Phillips
Circuit Judge